IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

MAY 3 1 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| TRAVIS CO. J.V., | § | |
| ROGER HILL, SR. and | § | |
| CHRISTOPHER HILL | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO. 06-CV-0146-FB |
| | § | |
| HENNESSEE GROUP LLC, | § | |
| ELIZABETH LEE HENNESSEE | § | |
| and CHARLES J. GRADANTE | § | |
| | § | |
| Defendants. | § | |

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS
AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Travis Co. J.V., Roger Hill, Sr., and Christopher Hill (collectively, "Plaintiffs") file

Plaintiffs' Response To Defendants' Motion To Dismiss The First Amended Complaint requesting

that the Court deny Defendants' motion and Motion for Leave to File Second Amended Complaint.

In support of these positions, Plaintiffs state as follows:

**The Court Should Deny Defendants' Request for Dismissal Pursuant to Rule 10(b)**

Defendants have requested that the Court dismiss Plaintiffs' First Amended Complaint

because of technical defects in Plaintiffs' compliance with FED. R. CIV. P. 10(b), such as failure to

number paragraphs, failure to incorporate factual allegations by reference, and an alleged failure to

separate every statement into a separate paragraph. This is an ironic request coming from these

Defendants who themselves fail to follow procedural rules that are arguably much more important

1

than FED. R. CIV. P. 10(b).

Specifically, on April 24, 2006, Defendants sent a letter to the Judicial Panel on Multi-District Litigation (MDL Panel) seeking consolidation of this case with a Multi-District proceeding in the Southern District of New York but did not serve a copy of that letter on Plaintiffs' counsel or certify to the court that such service had been made. This violated both FED. R. CIV. P. 5 and Rule 5.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. Only when Plaintiffs' counsel inquired two days later whether a letter had been filed and why Plaintiffs had not been served with it did Defendants' counsel correct the error. Even though Plaintiffs' counsel decided to move forward without seeking further relief, Defendants now ask this Court to apply the procedural rules strictly against Plaintiffs, while expecting this Court to overlook their own inadvertent shortcomings. If for no other reason, the doctrine of clean hands would suggest that Defendants' requested relief should be denied.

Defendants requested dismissal (which is presumably a request to dismiss without prejudice) also should be denied because Rule 10(b) does not provide for dismissal of a complaint for failure to comply with its requirements. Instead, assuming any motion is even necessary for the lack of paragraph numbering, the proper motion would be one under FED. R. CIV. P. 12(e) for a more definite statement. Rule 12(e) provides a plaintiff an opportunity to re-plead. *McClellon v. Lone Star Gas Co.,* 66 F.3d 98, 103 (5th Cir. 1995) ("the appropriate remedy when granting a motion based on nonconforming or deficient pleadings is to grant the complainant time within which to amend the complaint").

While the Court should not dismiss Plaintiffs' First Amended Complaint for lack of paragraph numbers, Plaintiffs do recognize that numbered paragraphs are required, and, in fact,

intended to have them inserted in the final draft. In a press for time, however, that intention was never communicated to counsel's secretary. Just like Defendants' failure to serve Plaintiffs' counsel, this was an inadvertent administrative mistake. Thus, Plaintiffs request the Court's permission to file the attached Second Amended Complaint, which corrects the defect.

Aside from the numbering issue, Plaintiffs' pleading does not contain the defects that Defendants contend. Plaintiffs' counsel believes that the amended complaint complies with the Rule 10(b) requirement to limit paragraphs, "as far as practicable to a statement of a single set of circumstances." The Rules do not require that each paragraph contain only a single fact, but states that they should "as far as practicable" contain only a single "set of circumstances." Even if Plaintiffs' paragraphs contain more than one set of circumstances, the pleading should be accepted where, as here, the paragraphing does not interfere with Defendants' ability to understand the claims against them. *Jackson v. New York State,* 381 F.Supp. 2d 80, 85-86 (N.D.N.Y. 2005). However, out of an abundance of caution, in the Second Amended Complaint, which Plaintiffs are requesting leave to file and are attaching hereto, counsel divides into two paragraphs the First Amended Complaint's third and ninth paragraphs of the Factual Background.

Next, Defendants complain that the pleadings are improperly vague because Plaintiffs allege every cause of action except the breach of contract claim against all three of the Defendants. Such pleading is exactly what Plaintiffs intended. While the Plaintiffs' causes of action are stated against all three Defendants, the factual contentions that precede and support those actions are made about specific Defendants. The Amended Complaint lists numerous specific false or misleading statements that the individual defendants made and the Plaintiffs relied upon, including, by way of example:

- Lee Hennessee ("Lee") told Roger that Hennessee Group performed extensive investigations of the hedge funds it recommended (First Amended Complaint p.3;

3

Second Amended Complaint ¶14);

- Lee told Roger that Hennessee Group performed ongoing monitoring and due diligence of the hedge funds it recommended (First Amended Complaint p.3; Second Amended Complaint ¶14);

- Lee claimed that Hennessee Group's due diligence included review of a hedge fund's back office accounting (First Amended Complaint p.3; Second Amended Complaint ¶14);

- Charles Gradante ("Charles") told Roger Hill that Hennessee Group had looked into the connection between Bayou's CFO and its purportedly independent auditor and there was nothing to be concerned about (First Amended Complaint p.7; Second Amended Complaint ¶30);

- A letter from Lee and Charles on Hennessee Group's website highlights Hennessee Group's "time tested advisory process," "proprietary research tools," and "depth of proprietary research and due diligence" (First Amended Complaint at p.4; Second Amended Complaint at ¶18).

Plaintiffs also explained why the fact finder will be able to find that these statements were false and why the individual Defendants should have known they were false. (First Amended Complaint p.7; Second Amended Complaint ¶¶30-33). For these reasons, Plaintiffs have intentionally and properly pleaded claims for fraud, negligent misrepresentation, and DTPA claims against all "Defendants."

**The Court Should Deny Defendants' Request for Dismissal Pursuant to Rule 9(b)**

Contrary to Defendants' contention, even a cursory review of Plaintiffs amended complaint shows that Plaintiffs' have met the pleading requirements of Rule 9(b) in relation to their claims against Lee and Charles. Plaintiffs' complaint includes specific allegations of falsehoods by Lee and Charles that, if the jury found they occurred, would support liability.

Without obviating the need to review the amended complaint in its entirety, examples of misstatements by Lee and Charles include:

- Lee told Roger Hill that Hennessee Group's due diligence included investigation of the back office accounting of hedge funds it recommended (First Amended

4

Complaint at p.3; Second Amended Complaint at 14);

- Charles made false or misleading statements to Roger Hill indicating that Hennessee Group had investigated the connection between Bayou's CFO and Bayou's "independent" auditor (First Amended Complaint at p.7; Second Amended Compliant at ¶30);

- Lee and Charles attended a meeting at which Hennessee Group hedge fund recommendations were made (including a Bayou recommendation) that were purportedly based upon Hennessee Group's extensive research and due diligence (Second Amended Complaint at ¶ ).

Plaintiffs also describe several facts that Hennessee Group failed to discover about the Bayou Group hedge funds. From this one can infer that the individual defendants' statements about Hennessee Group's due diligence and research processes were false when those statements were made. Pleading such circumstantial evidence is sufficient because "intent to defraud is not susceptible to direct proof," and therefore, "it invariably must be proven by circumstantial evidence." *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex. 1986). *See also, Coffell v. Stryker Corp.,* 284 F.3d 625, 634 (5th Cir. 2001). Thus, these allegations satisfy Plaintiffs' pleading burden under Rule 9(b), which permits pleading intent generally. *U.S. ex rel. Willard v. Humana Health Plan Texas, Inc.,* 336 F.3d 375, 384-85 (5th Cir. 2003). As such, Plaintiffs' fraud, negligent misrepresentation and DTPA claims against Hennessee and Charles should not be dismissed.

Further, the above allegations also are sufficient under the Private Securities Litigation Reform Act to support Plaintiffs' claims for federal securities violations, because they raise a "strong inference" of the individual defendants' intent to deceive. This "strong inference can be proven by showing severe recklessness by a defendant. *Plotkin v. I P Axess, Inc.,* 407 F.3d 690, 697 (5th Cir. 2005). Moreover, "[c]ircumstantial evidence may support a scienter inference." *Financial Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 287 (5th Cir. 2006).

5

Plaintiffs have alleged that despite Lee's representations that Hennessee Group conducted in depth due diligence on the hedge funds it recommended, Hennessee Group apparently failed to do even a minimal investigation of the managers of the Bayou hedge funds since no one at Hennessee Group discovered that Samuel Israel had included a blatant, easily verifiable lie regarding his past experience on his resume. *See,* Plaintiffs First Amended Complaint p.3-4 & 7; Plaintiffs' Second Amended Complaint ¶¶30. Similarly, the Amended Complaint points out that Charles represented to Roger Hill that Hennessee Group had looked into Roger's concern over the connection between Bayou's auditors and its CFO and found nothing to worry about. *See,* Plaintiffs' First Amended Complaint p.7; Plaintiffs' Second Amended Complaint ¶30. However, as Plaintiffs' amended complaint also points out, Hennessee Group personnel obviously had not looked very hard because they failed to discover that Richmond-Fairfield was a sham firm and had not conducted any audits of Bayou.

Hennessee Group is a relatively small investment advisory firm. Its Form ADV states that it has between six and ten employees with only five or fewer of those employees performing investment advisory functions. Further, Lee and Charles are its "managing principals"; it has only one other officer (a chief compliance officer who is not listed as a "control person"); it has no other owners; and it claims that only its owners, Lee and Charles, are "control persons." Further, Hennessee Group's website says that it has an Investment Committee that supervises its research team's due diligence. If all of this is true, there are not many other people besides the individual defendants who could be performing or supervising the research. This creates a strong inference that Lee and Charles knew what kind of research and due diligence the company generally conducted and what had been done regarding the Bayou hedge funds in particular. Thus, Lee and Charles either

6

knew that their statements were false or misleading, or they were reckless in making those statements.

The Court may rely on public disclosures such as Hennessee Group's Form ADV in a motion to dismiss, even when the document is not attached to the complaint. *Financial Acquisition Partners LP v. Blackwell,* 440 F.3d at 286. However, Plaintiffs have included this information from the Form ADV in the Second Amended Complaint that they are requesting leave to file. *See,* Second Amended Complaint at ¶32.

**Request for Dismissal Pursuant to Rule 12(b)(6) Should Fail**

<u>Control Person Liability</u>

As previously discussed, Plaintiffs adequately pleaded the individual defendants' direct liability. Thus, Plaintiffs did not need to plead liability under the statute providing for liability of control persons. However, insofar as Plaintiffs are amending their pleadings for other purposes, Plaintiffs seek leave to add a count alleging that the individual defendants are liable as control persons pursuant to 15 U.S.C. §78t. *See* Second Amended Complaint at ¶48.

<u>Liability for their Own Torts</u>

Defendants' blatantly misstate Texas law when they argue that "because, at all times, they were acting within the regular course and scope of their employment with Hennessee Group," they cannot be liable to Plaintiffs for negligence, gross negligence, breach of fiduciary duty, fraud or negligent misrepresentation. In fact, the exact opposite is true. An individual can always be liable for his or her own torts, regardless of whether an entity also can be vicariously liable for those torts. *Weitzel v. Barnes,* 691 S.W. 2d 598, 601 (Tex. 1985). Defendants cite cases that hold that corporate officers cannot be liable for breaching a duty owed only by the corporation. Those cases do not say

7

that an officer cannot be liable for breach of a duty owed by the officer herself simply because the officer breached the duty while acting as an officer or employee of an entity. *See Leitch v. Hornsby,* 935 S.W.2d 114, 117 (Tex. 1996).

Defendants owe Plaintiffs fiduciary duties because they are investment advisor representatives. If fiduciary duties were confined to the entity with whom a investor actually contracts or has an account, we would not regularly see claims brought against individual stock brokers and investment advisor representatives. Further, the U.S. Supreme Court has long stated that investment advisors have fiduciary duties under the Investment Advisor Act. *See, Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 17 (1979) ("As we have previously recognized, §206 [5 U.S.C. 80b-6] establishes federal fiduciary standards to govern the conduct of investment advisers"). Investment advisor representatives are subject to these same statutory duties. *S.E.C. v. Moran,* 922 F. Supp. 867, 895-896 (S.D.N.Y 1996) (SEC sued the owner of advisory firm individually for violating §206). Though the Investment Advisor Act does not create a private right of action, this does not negate a state common law action for breach of the recognized fiduciary duty.

Plaintiffs' amended complaint points out that Charles told Roger Hill he need not worry about Bayou because Hennessee Group had looked into the independence of Bayou's auditors and was satisfied there was not a problem. Likewise, the complaint states that Lee made numerous representations regarding the scope of Hennessee Group's due diligence services. These statements by the individual defendants are alleged to be false and/or misleading. Such false or misleading statements breached the individual defendants' fiduciary duties to disclose all material information regarding the advice being given.

8

Furthermore, insofar as the Court grants leave to file it, the Second Amended Complaint alleges that Lee and Charles participated in at least one meeting at which hedge fund recommendations were made to Hill family members. *See* Second Amended Complaint at ¶¶ 16, 20. Those recommendations purported to be based upon the Hennessee Group's alleged due diligence and research of those managers. At that meeting Lee and Charles did not point out any deviations from Lee's or other Hennessee personnel's representations regarding the scope of Hennessee Group's due diligence and investigation of the recommended funds, which included Bayou. Insofar as the individual defendants presented recommendations that were not based on the promised due diligence, but on factors other than the suitability of the investment for Travis Co (and later for Chris Hill), defendants' silence was a breach of one or more of their fiduciary duties.

Finally, Defendants point out that Plaintiffs did not allege a basis for alter ego liability. However, since Plaintiffs' claims based on direct liability are all sufficient, no such allegations were necessary.

## Conclusion

In conclusion, Defendants' motion to dismiss the amended complaint for picayune technical defects should be denied because the Defendants lack of clean hands makes it inequitable, because the case law and the procedural rules do not permit the dismissal, and because Plaintiffs' First Amended Complaint is properly pleaded. Moreover, the factual allegations in the amended complaint adequately allege misstatements and omissions by the individual defendants. Those misstatements and omissions that are now alleged by Defendants to be insufficient were significant enough at the time to induce the Plaintiffs to invest in Bayou and to induce them continue to hold that investment, costing them millions of dollars. Accordingly, these allegations should be sufficient

9

to withstand Defendants' Motion to Dismiss.

## Prayer

WHEREFORE, premises considered, Plaintiffs request that Defendants' Motion to Dismiss The First Amended Complaint Pursuant to FRCP Rules 10(b), 9(b) and 12(b)(6), be denied in all respects. Plaintiffs further request leave to file Plaintiffs' Second Amended Complaint. Alternatively, Plaintiffs request that Defendants' motion be treated as a motion for more definite statement and Plaintiffs be provided an opportunity to re-plead as the Court directs.

Respectfully submitted,

PIPKIN, OLIVER & BRADLEY, L.L.P.
1020 N.E. Loop 410, Suite 810
San Antonio, Texas 78209
Telephone: (210) 820-0082
Facsimile: (210) 930-8500

By:   _MGPipkin byKKO_  w/permission
     MARVIN G. PIPKIN
     State Bar No. 16026600
     KORTNEY M. KLOPPE-ORTON
     State Bar No. 00794104
     **ATTORNEYS FOR PLAINTIFFS**

## _CERTIFICATE OF SERVICE_

I hereby certify that a true and correct copy of the foregoing document has been sent via certified mail, return receipt requested, to the following counsel of record on this the 30th day of May, 2006:

Seagal V. Wheatley
Jenkens & Gilchrist, P.C.
113 E. Pecan Street, Suite 900
San Antonio, Texas 78205-1533

Ellen Bush Sessions
Jenkens & Gilchrist, P.C.
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202-2799

Bennett Falk
Brian Amery
Matt Wolper
Bressler, Amery & Ross, P.C.
2801 S.W. 149th Ave., Suite 300
Miramar, Florida 33027

     _Kortney Kloppe-Orton_
     Marvin G. Pipkin
     Kortney M. Kloppe-Orton

11